Maria Halowatsky, Also Known as Maria Halowe, Appellant, v. Central Greyhound Lines, Inc., Appellee.

Gen. No. 41,451.

Heard in the second division of this court for the first district at the October term, 1940. Opinion filed July 1, 1941.

ALFRED M. LOESER, of Chicago, for appellant; HAROLD Z. NOVAK, of Chicago, of counsel.

RYAN, CONDON & LIVINGSTON, of Chicago, for appellee; JOHN M. TUOHY and ROBERT I. LIVINGSTON, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued to recover damages for personal injuries sustained by her as a result of an accident that happened while she was a passenger on a coach of defendant, a common carrier. At the close of all the evidence the trial court sustained a motion to find for defendant and the jury upon an instruction by the court returned a verdict of not guilty. Plaintiff appeals from a judgment entered upon the verdict.

The first count of the complaint alleges that on April 14, 1937, defendant was a common carrier operating passenger automobile buses through the States of Michigan, Indiana and Illinois for the purpose of carrying passengers for hire and reward to certain cities, villages and towns; that on the date aforesaid plaintiff became a passenger upon one of defendant's buses operating between Detroit, Michigan, and Chicago, to be carried from Detroit to Chicago; that when the bus reached Michigan City, Indiana, it passed over a highway in said city known as Pine street, and while operating the bus on said street, defendant negligently operated the bus so that plaintiff was knocked to the floor and that she sustained certain injuries; that "at the time and place above mentioned, the defendant did one or more of the following acts and as a result thereof wrecked the motor bus operated by it, causing the damages and injuries to the plaintiff as aforesaid: a. Wantonly, recklessly and maliciously drove and operated said motor bus having no regard for the safety of others. b. Drove and operated said motor bus contrary to and in violation of Ordinance 1385 of the General Ordinance of the City of Michigan City, Indiana. c. Drove and operated said motor bus contrary to and in violation of Section 47-516 of the Uniform Act regulating traffic on highways. d. Otherwise so negligently drove and managed said motor bus that it ran into the pavement causing the

damages and injuries as aforesaid." The count further alleges that plaintiff, at the time, was in the exercise of due care and caution for her own safety; that she sustained serious injuries and also lost "great sums of money, jewelry and other valuables" to the extent of $500; that the injuries she received are permanent, and she prays for $25,000 damages. The second count charges general negligence.

The accident happened as the bus was proceeding down Pine street in Michigan City. Plaintiff testified that she boarded the bus in Detroit to go to Chicago; that she took a trip between Detroit and Chicago on one of defendant's buses three and four times a year; that on the time in question she had a seat next to the chauffeur so that she "could watch the dials, his clock—watch and see those things;" that upon former trips the bus did not proceed down Pine street; that the bus was "going very fast. It was between 45 and 50;" that she told the driver "he should be a little bit careful because we might have an accident because the bus was bumping up and down;" that the driver did not slow down the bus after she talked to him and the bumping continued; that "all of a sudden I saw myself lying on the floor and to my mind it came that the bus is going to the water, like to the lake, something like this, and I thought it was the end of me and that's all I know. When I woke I was right outside of the bus. From there I went in an ambulance to the hospital." Upon cross-examination the witness testified that the accident happened in the evening between eight and nine o'clock. Several doctors testified as to the injuries sustained by plaintiff. This concluded the evidence for plaintiff, save the testimony of the witness Robinson, that we will hereafter refer to. A motion by defendant for a directed verdict was denied.

Defendant's evidence demonstrates how and why the accident occurred. Richard P. Frame testified that

on April 14, 1937, he was city civil engineer of Michigan City; that the condition and maintenance of the sewage system came under his supervision; that he was called to the place of the accident about 9:30 p. m., and found that the pavement had given way under a Greyhound bus; that the bus was still in the hole in the street; that he made an immediate investigation to find the cause of the accident; that he found that the sewer had broken as a result of a heavy storm, and that the water had washed away all of the sand between the surface of the pavement and the sewer itself and that the pavement had caved in from the weight of the bus; that the hole was about five feet deep; that the next morning he found that the sewer had been cracked vertically and horizontally for some period and that the excessive storm and large volume of water that evening had caused the sewer to collapse; that just before the accident the pavement had been repaired and was in fairly good condition. Upon cross-examination the witness testified that the Greyhound buses going toward Chicago usually used Spring, Pine or Franklin streets; that at this time they were repairing Pine street. Upon redirect the witness stated that "this street was all right to be used. There was no connection between the breaking of the sewer and the work they were doing on the surface of the road." John Ramion, a street commissioner of Michigan City, testified that on the day in question there were some surface repairs being made on Pine street and that after the accident he saw the bus with the back end of it down in the hole; that the next morning he found a broken sewer tile about five or six feet below the surface of the street. Upon cross-examination the witness stated that he did not think the bus could have cracked the sewer. Upon redirect examination the witness testified: "On April 14, there was a heavy rain storm. Between Franklin, Pine and Spring streets, Pine street was the worst of all." Paul Buell,

a contractor, testified that at the time of the accident he was a sewer maintenance man and that he was called to the scene of the accident to put up barricades and lights; that there was a hole in the pavement and the left rear wheel of the bus was down in the hole; that the hole was about six feet wide, four feet long and about six feet deep; that when he looked in the hole he found that the tile was broken at the south end of the hole; that the next morning when he went to repair the sewer he found that the tile was broken "in four sizes and I removed the tile with my hands by throwing it out. I removed three lengths of sewer pipe;" that on the day of the accident they had "a heavy downpour . . . , about the heaviest I have seen in Michigan City since I have lived there;" that it was still raining at the time of the accident. William J. McCarthy testified that he lived in Burlington, Wisconsin, and worked for a feed manufacturer; that he was a passenger on the bus at the time of the accident; that while the bus proceeded over Pine street it stopped suddenly and the rear left end dropped; that it seemed to him that the left rear wheel had broken off; that when he got off the bus he saw that the right front corner of the bus was raised off the pavement about a foot and that in the left rear corner there was a hole in the street and the pavement had given way through the weight of the bus; that at the time of the accident it was raining quite hard. D. L. Becker, the driver of the bus, testified that there were nine or ten passengers on the bus; that as he was proceeding on Pine street, in Michigan City, at a speed of about fifteen miles per hour, "all at once the bus stopped and kind of tilted to the rear a little bit and I turned on the inside lights, told the passengers to be calm, and got out to see what was the matter. I saw the street had given way underneath the rear of the coach. There was a hole in the street there, and the left rear wheel was in the hole." Upon cross-examination he

testified that he always used Pine street in proceeding through Michigan City. Upon recross-examination the witness stated that the bus was about seven and one-half feet wide, thirty feet long, and weighed, when empty, about 18,000 pounds. A number of passengers that were on the bus testified that at the time of the accident the bus was going about fifteen miles per hour, but this evidence cannot be considered in passing upon the ruling of the court in directing a verdict for defendant.

Plaintiff contends that by showing that she was a passenger at the time of the injury she made out a *prima facie* case of negligence against defendant and that defendant was thereupon called upon to rebut or overcome a presumption of negligence that follows from the mere fact of injury. This contention is without merit. That the doctrine of *res ipsa loquitur* does not apply unless all the instrumentalities contributing to the accident are under the carrier's control, see *Chicago City Ry. Co. v. Rood,* 163 Ill. 477; *Letush v. New York Cent. R. Co.,* 267 Ill. App. 526. But in the instant case, as we have heretofore stated, defendant showed conclusively the cause of the accident. While the pavement gave way under the weight of the bus, the cave-in that caused the pavement to give way resulted from a broken sewer under the street, the water from the sewer having washed away the sand that had been between the pavement and the sewer. Defendant had no control over the sewer nor the street, and there is nothing in the evidence from which it could be inferred that defendant could have foreseen the sudden collapse of the pavement. Plaintiff argues that there is evidence to show that Pine street was in a bumpy condition and that defendant operated the bus over that street when it had the opportunity to proceed over either one of two nearby streets that were not bumpy. It is a sufficient answer to this contention to say that plaintiff was not injured because

Pine street was in a bumpy condition, nor did that condition proximately contribute to bring about the accident. Plaintiff also urges that her evidence shows that at the time of the accident defendant was proceeding at a high rate of speed, in violation of the Indiana statute, and that a jury would be justified in finding that the high rate of speed of the bus might have contributed to the collapse of the pavement. We are unable to see any causal connection between the speed of the bus and the accident. Indeed, the pavement would be more likely to collapse if the very heavy bus had been standing on it. Plaintiff contends that the testimony of her witness Robinson tends to support her claim that the excessive speed of the heavy vehicle had a direct bearing upon the accident. We do not think so. Robinson made no personal observation of the situation after the accident, nor at any other time, and his testimony amounts to no more than a conjecture that there might be several causes for the breaking of the sewer, ''too much weight, defects of the fill above the sewer, poor circulation or poor run-off. . . . The rate of speed of a vehicle together with weight could have something to do with the breaking of the sewer.'' It would be idle to argue that while the bus speeded over the spot where the accident occurred, traveling only a few feet, it broke the sewer and thereby caused the water from the sewer to escape and wash away all the sand between the sewer and the pavement. In the face of the positive evidence of witnesses as to the cause of the collapse of the pavement the conjectural evidence of Robinson *that the speed of the bus, or several other causes, could have something to do with the breaking of the sewer,* has no probative weight in determining the cause of the accident. Photographs showing the situation, after the accident, strongly support the testimony of the witnesses for defendant as to the cause of the collapse. The general rule is that a fact can-

not be regarded as proven where the evidence merely gives rise to conjecture or suspicion of its existence. (17 Cyc. 754.)

Plaintiff contends that the court abused its discretion in refusing to admit competent evidence offered on behalf of plaintiff. There is no merit in this contention. At the close of all the evidence, after the trial court had heard arguments upon defendant's motion for a directed verdict and was ready to pass upon the motion, counsel for plaintiff stated that he would like to have the cause reopened for the purpose of having a witness testify, whereupon counsel for defendant objected to reopening the case upon the ground that the court was ready to make a ruling upon the motion to direct a verdict. Counsel for plaintiff then stated that he realized that it was a matter that rested in the sound discretion of the court, but he thought that in justice to plaintiff the witness should be heard. The counsel made no statement to the court as to who the witness was nor what counsel expected to prove by the witness, but he undertakes to inform us of the nature of the evidence that he expected to prove by the witness. We must pass upon the trial court's action in the light of the record that was presented to the trial court. It is evident from the statement made by plaintiff's counsel to the trial court that he did not place much reliance upon the testimony of the witness he sought to introduce. The instant contention is without the slightest merit.

The accident was a deplorable one, but after a careful consideration of all the evidence in the case we are satisfied that the trial court was justified in directing a verdict for defendant.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.